NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MELISSA D., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, H.D., K.D., *Appellees*.

No. 1 CA-JV 15-0420
FILED 12-27-2016

Appeal from the Superior Court in Maricopa County
Nos.  JD28153, JS17676
The Honorable Kristin C. Hoffman, Retired Judge

**AFFIRMED**

COUNSEL

Melissa D., Mesa
*Appellant*

Arizona Attorney General's Office, Tucson
By Dawn R. Williams
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Andrew W. Gould and Judge Patricia A. Orozco joined.

---

**S W A N N**, Judge:

**¶1**        Melissa D. ("Mother") appeals the superior court's severance of her parental rights to H.D. and K.D. (collectively, "the children"). The superior court found that the children were dependent as to Mother, that Mother abused and neglected the children, and that severance was in their best interests. Mother appeals, pro per, on constitutional and evidentiary grounds. We affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**        In April 2014, the Department[1] received a report that the children were receiving unnecessary medical treatments contrary to their best interests and the recommendations of their doctors. Five days later, the Department took custody of the children.

**¶3**        After over a year of the Department attempting to provide services to Mother and Chad D. ("Father"),[2] the superior court tried dependency and severance petitions in a consolidated proceeding. *See K.D. v. Hoffman*, 238 Ariz. 278 (App. 2015). After twelve days of testimony, the superior court made detailed factual findings about the children's respective medical histories before and after the Department took custody.

---

[1]        Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety is substituted for the Arizona Department of Economic Security in this matter. *See* ARCAP 27. In the text of our decision, we refer to both the Department of Child Safety and the Arizona Department of Economic Security as "the Department."

[2]        The superior court also severed Father's rights, and he appealed. After his counsel filed an affidavit pursuant to Rule 106(G) of the Arizona Rules of Procedure for the Juvenile Court, Father's appeal was dismissed.

The superior court found that the children were dependent as to Mother because she sought excessive medical procedures the children did not need for medical conditions they did not have. *See* A.R.S. § 8-201(15). The superior court found clear and convincing evidence of abuse and neglect, and further found by a preponderance of the evidence that severance was in the children's best interests. *See* A.R.S. § 8-533(B)(2). Mother timely appeals.

## DISCUSSION

¶4        Mother argues that she was denied due process, the superior court improperly excluded evidence, the Department destroyed evidence, and the evidence presented does not support the superior court's findings.[3]

I.        DUE PROCESS

        A.        Right to a Jury Trial

¶5        Mother argues that the superior court improperly denied her a jury trial. Neither the Arizona or federal constitutions require a jury trial to sever parental rights. *Monica C. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 89, 93, ¶ 17 (App. 2005). And in 2007, the Legislature eliminated the statutory right to jury trial in severance actions. *Ariz. Dep't of Econ. Sec. v. Reinstein*, 214 Ariz. 209, 213, ¶ 14 (App. 2007). The superior court correctly denied Mother's request.

        B.        Access to and Seal of Court Records

¶6        Mother next argues that she was denied access to exhibits and records during trial and on appeal and that the records should be made public.

¶7        In April 2015, the superior court prohibited Mother from having any further unsupervised access to any of the case's records. The superior court appointed a private party to retain the records and provide her with supervised access. We agreed such precautions were necessary

---

[3]        Mother also contends that her house and computer were searched in violation of the Fourth Amendment. The record contains nothing regarding such an incident, and we do not address the issue. Mother also urges us to disregard the Department's answering brief for untimeliness. However, the Department showed good cause for the delay, and we properly extended time.

and directed the superior court to make arrangements for Mother to have the same supervised access to the records on appeal as at trial.

¶8        The precautions were necessary to protect the children's privacy and safety.  Mother ran a website.  Several times, confidential information about the children and court proceedings appeared online.  Before trial, the superior court held Mother in contempt for violating confidentiality orders by putting pleadings online, posting videos to YouTube, participating in an internet radio show, and divulging detailed medical information about the children in interviews.  In one interview, she acknowledged the confidentiality order and her decision to ignore it.  The superior court specifically noted that Mother "has made it clear that she does not agree with the Court's orders or its authority to protect the privacy of the children."

¶9        On the sixth day of trial, the superior court closed the proceedings to the public after partial recordings of trial testimony appeared on a social networking site in violation of the admonition given eight times in the previous five trial days and signed by those in the audience.  *See* A.R.S. § 8-525(D), (F); Ariz. R.P. Juv. Ct. 41(E), (G). Twice, Mother threatened to post documents and information on the Internet when the superior court properly refused her request to admit unidentified documents into evidence.

¶10        Though Mother objected to exhibits that she had not seen or were not "in front" of her, Mother could have viewed the records at any time with supervision.  During trial, the private party came to court and offered Mother a digital copy of the records to use during trial, but Mother refused.

¶11        In view of Mother's disregard for confidentiality orders and the instances of confidential information appearing on Mother's website, we and the superior court properly prohibited her from having unsupervised access to court records.  The trial proceedings were properly closed when it became clear that those in attendance would not obey court orders prohibiting disclosure of any personally identifiable information about the children.

C.        Waiver of Mother's Presence at Trial

¶12        Mother next argues that she was prohibited from attending the trial.  On the sixth day of trial, after the superior court closed the proceedings to the public, Mother claimed that she was locked in the courtroom and not permitted to exit during a recess.  After the superior

court explained that the doors could only be locked to prevent entrance, not exit, Mother left the courtroom for the rest of the day.

¶13        On the seventh day, Mother arrived late and refused to enter the courtroom alone.  The superior court ruled that only Mother could enter the courtroom.  Mother chose not to enter.  The superior court stated that Mother was welcome to enter at any time and had someone wait outside in case she wished to enter; in some of the later proceedings, the door was left unlocked.

¶14        The superior court properly closed the proceedings to the public to prevent further Internet postings but ensured that Mother could enter at any time.  The superior court found that Mother voluntarily waived her presence and we see nothing contrary in the record.

        D.        Mother's Right to Self-representation

¶15        Mother next argues that the superior court denied her the right to represent herself at the proceedings.  Mother asked to proceed pro per in February 2015.  She proceeded pro per at trial.

¶16        Three times during trial, the Department moved to have Mother's right to self-represent rescinded.  The superior court denied the motions each time, and did not revisit the issue even when Mother's objections and outbursts grew more disruptive.  When she departed on the sixth day of trial, Mother declared that she was leaving to "do court online" unless she could appear telephonically.  The superior court denied her request and warned her that her right to self-representation would be waived if she was not present.  Mother then left for the day.

¶17        Immediately upon her departure, the superior court appointed her advisory counsel as her attorney and a guardian ad litem to represent her interests.  The next trial day, Mother came to trial late with an unidentified person ("POA") claiming to speak for her based on power of attorney.  Mother asked that POA be allowed in with her, and the superior court denied the request.  Nothing in the record suggests POA was a lawyer or could have represented Mother in the proceedings.

¶18        Nevertheless, Mother argues that the superior court should not have permitted her guardian ad litem or appointed counsel to represent her.  When she came to the courtroom door with POA, she gave the court documents purporting to terminate the guardian ad litem and her appointed counsel.  The attorney then moved to withdraw.  In ruling on the motions, the superior court relied on Sixth Amendment factors:

[W]hether an irreconcilable conflict exists between counsel and the accused, and whether new counsel would be confronted with the same conflict; the timing of the motion; inconvenience to witnesses; the time period already elapsed between the alleged offense and trial; the proclivity of the defendant to change counsel; and quality of counsel.

*State v. Torres*, 208 Ariz. 340, 344, ¶ 15 (2004) (citation omitted). The superior court found that all five factors weighed against appointing new counsel or permitting the withdrawal halfway through trial. We agree these factors also apply to severance trials. There was no abuse of discretion applying them to these facts. *See id.* at 343, ¶ 9 (acknowledging the standard of review on appeal).

### E. Judicial Bias

**¶19** Mother argues that the trial judge was generally biased. She filed two motions seeking to disqualify judges who presided over portions of the case. Both motions were baseless. Like the presiding judges who decided the motions, we perceive no evidence of judicial bias in this record — indeed, the trial judge made every effort to afford Mother the full measure of due process despite the obstacles she raised.

**¶20** After Mother stopped attending trial, the Department moved several times to have Mother's absence deemed admission of the allegations and her rights severed. Each time the trial judge denied the request, giving Mother an opportunity to return and participate in the proceedings. Additionally, when Mother was present, the trial judge gave her significant leeway even when her behavior was disruptive.

**¶21** Mother similarly accuses this court of bias on appeal because we limited her access to the records and did not make them public. This court's orders, though perhaps not the orders Mother sought, were not the product of bias — this case required extraordinary measures after the children's personal information was released online and discussed in radio programs in violation of Arizona law. *See supra* ¶¶ 8–9; *see* A.R.S. § 8-525(D), (F); Ariz. R.P. Juv. Ct. 41(E), (G).

## II. EVIDENTIARY OBJECTIONS

**¶22** Mother next argues evidence was improperly excluded by the superior court and destroyed by the Department. We review the superior court's admission of evidence for an abuse of discretion. *See State v. Garcia*, 200 Ariz. 471, 475, ¶ 25 (App. 2001).

A.      J.D.

¶23      On the third day of trial, Mother moved to allow her older child ("J.D.") to testify as a character witness in the middle of the Department's case-in-chief. The superior court's denial of that request was entirely proper. *See* Ariz. R. Evid. 611. Nonetheless, the court left open the possibility Mother could call J.D. during her case-in-chief. The court did not err.

B.      K.D.

¶24      Mother also challenges the superior court's refusal to let K.D. testify. On the fourth day of trial, K.D. requested, through counsel, to attend the trial and possibly testify. The superior court denied the request, finding that attending or participating in the proceedings was not in K.D.'s best interests. K.D. filed a special action arguing that children have an absolute right to testify in severance and dependency hearings. *K.D.*, 238 Ariz. at 279-80, ¶¶ 1, 5. We accepted jurisdiction but denied relief. *Id.* at 281, ¶ 11. We held that the superior court may consider the best interests of the child in determining whether to allow the child's testimony at such hearings. *Id.* at ¶ 10.

¶25      Though we held that the court was right to consider K.D.'s best interests, we were not asked and did not decide whether the superior court abused its discretion by prohibiting K.D. from appearing or testifying. *See id.* at 279 n.1, 281, ¶¶ 5, 10. We do so now and find no abuse of discretion.[4] K.D.'s therapist testified that it would be detrimental to K.D.'s stability and safety and could be traumatizing, setting back K.D.'s recovery. A forensic psychologist with the Department who evaluated K.D. also opined that it would be detrimental for K.D. to attend or testify at trial.

¶26      The superior court acted properly, and Mother's rights were not impaired. *See Dep't of Child Safety v. Beene*, 235 Ariz. 300, 305–07, ¶¶ 12, 19 (App. 2014) (noting that severance trials are civil matters and parents have no federal or state constitutional right to confront witnesses and that the best interests of the child must be balanced with a parent's right to due process).

---

[4]      Even if K.D. had testified at trial, it would have probably harmed Mother's case. K.D.'s counsel indicated K.D. "want[ed] the opportunity to confront her mother." Thus, excluding her testimony was not prejudicial and may have prevented additional damaging testimony.

### C. Documents and Exhibits on Cross-examination

¶27 On two occasions, the superior court did not allow Mother to impeach witnesses with documents that were not in evidence or had not been disclosed. However, the superior court permitted Mother to use documents if she could locate them in the official exhibits. On numerous occasions the superior court sustained objections to Mother offering facts while cross-examining witnesses. We perceive no abuse of discretion in the evidentiary rulings or orders prohibiting Mother from offering testimony in the form of questions.

### D. Witnesses in Mother's Case-in-chief

¶28 On the tenth day of trial, the Department rested, and the superior court asked Mother's counsel to call her first witness. Mother had waived her presence and had refused to meet with or talk to her appointed counsel. Her counsel could only rely on Mother's disclosure statement. The statement included, *inter alia*, state legislators, a superior court judge, K.D.'s counsel, the Maricopa County Sherriff, J.D., and the children. The descriptions of their potential testimony were vague and mostly referenced issues irrelevant to the proceeding. The list did not include addresses or sufficient information to subpoena the few people on the list who could have testified. Her attorney therefore rested the case without calling any witnesses. By failing to appear, make proper disclosures, or communicate with her appointed counsel, Mother left her counsel with no witnesses. The court committed no error.

### E. Spoliation

¶29 Mother also contends that evidence that would have shown the children were abused in the Department's custody was destroyed. Before trial, Mother filed a "motion to dismiss trial" and a "request for sanctions" arguing, in part, that the Department and its attorney destroyed evidence that the foster placement abused the children. The Department explained that the former court-appointed special advocate ("CASA") had recorded conversations with the children. When asked to disclose the recordings, the CASA claimed to have destroyed them.

¶30 We find no admissible evidence in the record concerning the alleged abuses or the content of any recordings. From the record, it appears that the CASA's recordings may have pertained to the children's initial weight loss while they were in the Department's custody. At trial, Mother contended that the children's weight loss endangered their health. Witnesses testified about the children's weight loss, and Mother cross-

examined on the issue. Mother could have called the CASA to the stand during her case-in-chief to testify about the allegedly destroyed tapes and their content. She could have questioned the CASA about what she observed during the children's early days in the Department's custody. But Mother waived her presence for her case-in-chief and left her attorney with no useable witness list. *See supra* ¶ 28.

**¶31** The record does not indicate that the Department was ever in possession of any recordings, or that it destroyed or otherwise failed to disclose any evidence. Dismissal was not warranted.

III. SUFFICIENCY OF THE EVIDENCE

**¶32** Mother's final contention is that the evidence presented at trial was insufficient to support the superior court's findings that Mother abused and neglected the children, and that severance was in their best interests.[5]

**¶33** The right to custody of one's child is fundamental but not absolute. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). To sever a parent's rights, the Department must show by clear and convincing evidence at least one of the statutory factors. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 7 (App. 2016); *see also* A.R.S. § 8-533(B). The Department must also show by a preponderance of the evidence that severance is in the children's best interests. *Dominique M.*, 240 Ariz. at 98, ¶ 7. On appeal, we will not reweigh the evidence and will accept the superior court's findings if they are supported by reasonable evidence. *Id.* at ¶ 6.

**¶34** Though Mother is pro per by choice, she is held to the same standard as a lawyer, *Higgins v. Higgins*, 194 Ariz. 266, 270, ¶ 12 (App. 1999), and she has failed to provide any citations to the record to justify her factual contentions, *see* ARCAP 13(a)(5). We have conducted our own review of the record, and we find sufficient evidence to support severance.

---

[5] We do not separately address the dependency finding as the clear and convincing evidence of abuse and neglect is enough to also show dependency by preponderance of the evidence, particularly that the children's "home is unfit by reason of abuse, neglect, cruelty or depravity by a parent" under A.R.S. § 8-201(15)(a)(iii). *See Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶¶ 11–12 (App. 2015).

A.    Abuse and Neglect

¶35    Mother first argues that the superior court did not give enough weight to evidence that the children were diagnosed with serious health issues by medical professionals. The superior court found that Mother interfered with the children's medical care, did not follow advice from medical providers, and coached the children to act in certain ways in order to receive additional medical care.  The superior court concluded the children were "dramatically" healthier in the Department's custody, and we see ample evidence in the record to support its conclusion.

¶36    An expert testified that on reviewing the children's voluminous medical records, the children were "absolutely" the victims of Factitious Disorder.[6]  In the 21 months before the Department took custody, the children collectively had 87 doctors' visits, 17 hospitalizations, in-home nursing, and wheelchairs.  Additionally, Mother was advocating for one-on-one nursing care while they were at school in case they suffered an allergic reaction or asthma attack.

¶37    The evidence clearly shows that Mother advocated drastic and unnecessary medical procedures, in some cases for problems that were not medically verified.  For example, there was evidence that Mother tried to create specific symptoms or interfere with care, such as feeding a child constipating foods, then taking the child to urgent care for an x-ray because the child was "backed up"; seeking medications for a urinary tract infection that would cause constipation despite the child's alleged history of constipation; bribing the children to behave certain ways in front of doctors; giving misinformation about the results of medical tests to health care professionals; and turning off IV feeds while the children were in the hospital, preventing them from receiving the treatments ordered by their doctors.

¶38    While in the Department's custody, H.D. has not had stool impactions or needed "cleanouts," despite regularly needing them in Mother's care.  K.D.'s weight issues were at their lowest point while Mother still had visits with the children, then rebounded to the normal range when the visits stopped.  Though the children were given gastro stomach tubes ("feeding tubes") due to reported symptoms of gastroparesis, they now eat

---

[6]    We use "Factitious Disorder" to include all of the terms used interchangeably in the record including Munchausen by proxy, factitious disorder, illness falsification, and factitious disorder imposed on another with illness falsification.

orally, maintain a good weight, and can, or may soon be able to, have their feeding tubes removed. The children's current doctor testified that if the children had gastroparesis, some symptoms should have manifested themselves in the time they have been in the Department's custody. The children have not required, used, or wanted to use wheelchairs and have not reacted to any of their alleged allergens.

**¶39** Mother next argues that the superior court did not give enough weight to the billing statements for "failure to thrive" while the children have been in the Department's custody. Mother does not point to any billing statements in the trial record to support this claim, and we see none. *See* ARCAP 13(a)(4), (5), (7). Even if such evidence were in the record, we will not reweigh the evidence on appeal. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002). The medical and expert testimony established that the children are far healthier in the Department's custody than they were in Mother's, and billing statements that include no medical details would not even slightly move the scale given the weight of evidence that Mother medically abused the children.

### B. The Children's Best Interests

**¶40** The superior court must find that the children will affirmatively benefit from the severance or be harmed by the continued relationship with the parent. *In re Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Here, there is ample evidence of both. The children are adoptable and their current foster home is a possible adoption placement. *See Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 17 (2016) ("[D]epending on the circumstances, adoption can provide sufficient benefits to support a best-interests finding . . . ."). The children have expressed that they do not wish to return to Mother's care, and because Mother refused the Department-offered services to treat her probable psychological issues, did not obey the rules for visitation, and continues to believe the children are ill, there is a high risk the children would suffer continued medical abuse in her custody. *See Yuma Cnty. J-88-201, J-88-202, J-88-203*, 172 Ariz. 50, 53 (App. 1992) (requiring the Department to make "diligent efforts" to reunite the family). The superior court properly found that severance is in the children's best interests.

## CONCLUSION

¶41 For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA